**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:<br><br>KAISHA MONIQUE LYMON | § <br> §    CASE NO: 18-13128 <br> § <br> §    CHAPTER 13 <br> § <br> §    SECTION A <br> § |
| MURPHY OIL USA, INC., *et al.*,<br><br>    PLAINTIFFS,<br><br>V.<br><br>KAISHA MONIQUE LYMON,<br><br>    DEFENDANT. | § <br> § <br> § <br> § <br> §    ADV. NO. 19-1121 <br> § <br> § <br> § <br> § <br> § |

**MEMORANDUM OPINION AND ORDER**

    This Court held an evidentiary hearing on November 14, 2019, to resolve two related matters: (1) the *Motion To Dismiss, for Declaratory Judgment and/or Injunctive Relief* (the "Motion for Declaratory Judgment"), [Adv. No. 19-1121, ECF Doc. 4], filed by Murphy Oil USA, Inc. and Liberty Mutual Insurance Company (together, "Murphy Oil") in the above-captioned adversary proceeding, the Opposition to that Motion filed by the Debtor Kaisha Monique Lymon ("Lymon"), [Adv. No. 19-1121, ECF Doc.13], and Murphy Oil's Reply Brief, [Adv. No. 19-1121, ECF Doc. 13]; and (2) the *Objection to Debtor's Revised Statement of Financial Affairs* (the "SOFA Objection"), [ECF Doc. 91], filed in the main case by Murphy Oil in response to the second amended *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (the "Second Amended SOFA"), [ECF Doc. 88], filed by Lymon. Attorneys Chauvin Kean and Mike McGlone appeared on behalf of Murphy Oil. Attorney Raphael Bickham appeared on Lymon's behalf. At the conclusion of the hearing, the Court took both matters under advisement.

Based upon the pleadings, the record, the arguments of counsel, and the testimony presented at the evidentiary hearing, and after due deliberation and sufficient cause appearing therefor, this Court GRANTS the Motion for Declaratory Judgment and OVERRULES the SOFA Objection, finding as follows: [1]

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334 and the Order of Reference of the District Court dated April 11, 1990. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b). The venues of Lymon's chapter 13 case and the related adversary proceeding are proper under 28 U.S.C. §§ 1408 and 1409(a).

## NOTICE

Notice of both the Motion for Declaratory Judgment and the SOFA Objection was sufficient and constituted the best notice practicable. All persons affected by this Memorandum Opinion were afforded a full and fair opportunity to be heard prior to and during the evidentiary hearing. Notice of the relief granted herein has been given to all persons affected by this decision and is in full compliance with due process.

## FINDINGS OF FACT

Lymon filed for bankruptcy relief under chapter 13 of the Bankruptcy Code on November 23, 2018, and, by signing the petition, affirmed the following statement: "I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed as findings of fact.

2

a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both." [No. 18-13128, ECF Doc. 1, at 6]. Approximately nine months before filing her bankruptcy petition, Lymon and her husband filed a lawsuit against Murphy Oil and other defendants in the 19th Judicial District of Louisiana (the "State Court Action"), alleging painful and permanent injuries requiring surgery that she sustained in 2017 after tripping outside of a Murphy Oil gas station. *See* Hr'g Tr. 37:5–38:3 (Nov. 14, 2019), [Adv. No. 19-1121, ECF Doc. 30].

When Lymon filed her bankruptcy petition, she also filed a document entitled *Schedule A/B: Property*, which identifies all assets of her estate. [No. 18-13128, ECF Doc. 2]. Question 33 on Schedule A/B asks whether Lymon held any "[c]laims against third parties, whether or not you have filed a lawsuit or made demand for payment," to which she answered "No." [No. 18-13128, ECF Doc. 2]. Also contemporaneously with her bankruptcy petition, Lymon filed a document entitled *Statement of Financial Affairs for Individuals Filing for Bankruptcy* ("Initial SOFA"). [No. 18-13128, ECF Doc. 1, at 11]. Part 4 of the Initial SOFA asks Lymon to answer the question: "Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?" [No. 18-13128, ECF Doc. 1, at 14]. Lymon disclosed one lawsuit, *Kaisha Lymon vs. Mary Espinosa,* Case No.: 2017-03085, filed in the First City Court of New Orleans, Louisiana, but did not list the State Court Action against Murphy Oil. *Id.* By signing the Initial SOFA, Lymon declared: "I have read the answers on this Statement of Financial Affairs and I declare under penalty of perjury that the answers are true and correct." [No. 18-13128, ECF Doc. 1, at 22]. On January 9, 2019, Lymon amended her Initial SOFA, but did not disclose the State Court Action (the "First Amended SOFA"). [No. 18-13128, ECF Doc. 32].

Counsel for the standing chapter 13 Trustee held a meeting of Lymon's creditors pursuant to 11 U.S.C. § 341 on January 30, 2019. [No. 18-13128, ECF Doc. 41]. The "341 meeting," as it

3

is commonly called in bankruptcy practice, is a meeting in which the chapter 13 Trustee and any interested creditor can ask a debtor questions under oath about the information contained in his or her bankruptcy petition and supporting documents filed in the record. Lymon testified at the evidentiary hearing that she did not disclose the State Court Action at the 341 meeting when asked whether she was "suing anybody." *See* Hr'g Tr. 33:16–36:22 (Nov. 14, 2019).[2]

Lymon continued to participate in the bankruptcy case, making payments to the chapter 13 Trustee between January and April 2019 pursuant to her proposed chapter 13 plan. *See* Hr'g Tr. 50:7–19 (Nov. 14, 2019). She amended her chapter 13 plan several times during that same time period. [No. 18-13128, ECF Docs. 36, 46, 61, 69]. Her last amended plan contemplated that unsecured creditors would receive distributions equal to only 4.37% of their allowed claims. [No. 18-13128, ECF Doc. 69, at 8]. The Court confirmed that plan on April 16, 2019. [No. 18-13128, ECF Doc. 72]. Although the chapter 13 plan form adopted by this Court does not include a space to list pending claims belonging to the estate against third parties, the plan form does contain the following requirement: "The *nonexempt* proceeds of any lawsuit or unliquidated claim held by the Debtor as of the date of filing or accruing during the term of this Plan must be turned over to the Trustee and shall constitute an additional distribution to creditors." [No. 18-13128, ECF Docs. 36, 46, 61, 69].

---

[2] In lieu of direct testimony from counsel for the standing chapter 13 Trustee, the parties stipulated at the evidentiary hearing to the admission of a transcript provided by Murphy Oil of the audio recording of the § 341 meeting held on January 30, 2019, and the Court admitted the transcript into evidence as Exhibit 1. *See* Hr'g Tr. 14:18–15:20 (Nov. 14, 2019). That transcript, however, is dated incorrectly as July 8, 2019.

Just over two months after the Court confirmed Lymon's chapter 13 plan, counsel for Murphy Oil deposed Lymon in connection with the State Court Action.[3] When asked whether she had ever filed for bankruptcy, Lymon replied, "No." *See* Lymon Dep. 36:5–6 (July 8, 2019). When asked immediately afterward whether anyone else had ever filed a bankruptcy on her behalf, Lymon had the following exchange with Murphy Oil's counsel:

> A. I talked—I talked to a bankruptcy attorney before, yes.
> Q. But you have never filed for bankruptcy?
> A. It is not—he said that they were waiting for me to come to complete it. I don't know if they filed it or not. I don't know.
> Because I don't have steady employment, the—the—I don't know the name of the person. Like the officer of the bankruptcy, that person. They said that they didn't—they weren't sure if I could do it because I needed to prove steady income or something like that.

Lymon Dep. 36:7–20 (July 8, 2019). After Murphy Oil's counsel presented Lymon with the bankruptcy petition and other documents bearing her electronic signature and filed on her behalf in this bankruptcy case, including the SOFA, Lymon ultimately stated that she met with bankruptcy counsel, gave him documents such as bills and invoices she had received, and electronically signed documents that bankruptcy counsel sent to her, but maintained that she "d[idn't] remember reading any of that." *See* Lymon Dep. 40:20–53:14 (July 8, 2019). In her testimony at the evidentiary hearing before this Court on November 14, 2019, however, Lymon admitted that she had, in fact, read those documents sent to her by bankruptcy counsel and understood them, and she further acknowledged that she had not been truthful in her deposition testimony regarding whether she had filed for bankruptcy relief. *See* Hr'g Tr. 52:4–20 (Nov. 14, 2019).

---

[3] The parties stipulated at the evidentiary hearing to the admission of the transcript of Lymon's deposition on July 8, 2019, and the Court admitted the deposition transcript as Exhibit 2. *See* Hr'g Tr. 16:18–17:5, 26:21–27:3 (Nov. 14, 2019).

5

On August 1, 2019, Murphy Oil filed a *Complaint for Declaratory Judgment and Injunctive Relief* in this Court initiating an adversary proceeding and attached Lymon's bankruptcy petition, Schedules, amended Schedules, initial and amended plans of reorganization, and this Court's Order confirming Lymon's plan as amended. [No. 18-13128, ECF Doc. 87; Adv. No. 19-01121, ECF Doc. 1]. Murphy Oil's Complaint seeks a declaratory judgment that Lymon is judicially estopped from pursuing the State Court Action for failing to disclose the State Court Action in her bankruptcy case. [Adv. No. 19-01121, ECF Doc. 1]. Contemporaneously, Murphy Oil filed the Motion for Declaratory Judgment. [Adv. No. 19-01121, ECF Doc. 4].

A week later, on August 7, 2019, Lymon filed the Second Amended SOFA, which disclosed in the bankruptcy case—for the first time—the State Court Action. [No. 18-13128, ECF Doc. 88]. Murphy Oil filed the SOFA Objection on August 26, 2019, asserting that Lymon should not be allowed to file the Second Amended SOFA as an attempt to correct her prior omissions and misrepresentations of the State Court Action in the bankruptcy case. [No. 18-13128, ECF Doc. 91].

## CONCLUSIONS OF LAW

**A. Legal Standards for Disclosures in Bankruptcy and Judicial Estoppel**

The Bankruptcy Code places "an express, affirmative duty" on debtors in bankruptcy proceedings "to disclose all assets, *including contingent and unliquidated claims*." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir. 1999) (citing 11 U.S.C. § 521(1)). That duty to disclose is continuous. *See id*. at 208. "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Id*. (internal quotation and

6

citations omitted). Indeed, debtors must disclose all assets, even those they believe are worthless or not property of the estate. *See Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F. 3d 126, 130 & n.4 (5th Cir. 2013) (citing *United States v. Beard*, 913 F.2d 193, 197 (5th Cir. 1990) (explaining that debtors have a "duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain, even if that assets is ultimately determined to be outside of the bankruptcy estate"); *In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003) ("[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." (internal quotations and citations omitted)).

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Superior Crewboats, Inc. v. Primary P & I Underwriters* (*In re Superior Crewboats, Inc.*), 374 F.3d 330, 334 (5th Cir. 2004). "[A]gainst the backdrop of the bankruptcy system . . . judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system . . . ." *United States v. GSDMIDEA City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011)). In fact, "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *In re Coastal Plains, Inc.*, 179 F.3d at 205 (quoting *Rosenshein v. Kelban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). "Thus, judicial estoppel can bar a plaintiff from proceeding with a claim when he or she failed to disclose that claim in a bankruptcy petition." *In re Vioxx Prods. Liab. Litig.*, 889 F. Supp. 2d 857, 860 (E.D. La. 2012). Indeed, "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a

7

separate tribunal based on that undisclosed asset." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261–62 (5th Cir. 2012) (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

"A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe,* 412 F.3d at 600 (citing *In re Coastal Plains, Inc.*, 179 F.3d at 206–07).

### B. Lymon's Conduct Satisfies the Elements of Judicial Estoppel

Little question exists that Lymon satisfies the first element of judicial estoppel. She filed the State Court Action approximately nine months before filing her chapter 13 bankruptcy petition. She did not disclose the State Court Action in the bankruptcy proceedings for ten months after filing her petition for bankruptcy relief—and only disclosed the State Court Action after being confronted by Murphy Oil. Lymon testified at the evidentiary hearing that she did not disclose the State Court Action in her bankruptcy schedules or at the 341 meeting because the State Court Action "was in limbo" and she "didn't know it was coming to fruition." Hr'g Tr. 36:16–22 (Nov. 14, 2019). This Court did not find Lymon to be credible when she testified that she believed she had no duty to disclose the State Court Action in her bankruptcy case because the case had not been reduced to judgment. Lymon testified to having earned multiple college degrees in public relations, human resource management, and respiratory therapy, as well as possessing a real estate license, owning her own real estate business, and having recently passed the test to become licensed as a mortgage loan originator. *See* Hr'g Tr. 28:5–30:13 (Nov. 14, 2019). Based on her testimony and demeanor, this Court generally found Lymon to be knowledgeable and sophisticated. Further, Lymon conceded that she had read, understood, and assisted in the preparation of all of the bankruptcy documents filed on her behalf, which required her to disclose

8

all assets and execute the documents under penalty of perjury. *See* Hr'g Tr. 52:4–20 (Nov. 14, 2019). And in his opening statements during the evidentiary hearing, Lymon's counsel "freely admit[ted]" that "Lymon had a duty to disclose her state court lawsuit to the Bankruptcy Court and she neglected to do so." Hr'g Tr. 10:22–24 (Nov. 14, 2019). Lymon also testified that she knew she was injured at the time of the alleged accident on Murphy Oil's property in 2017, sought medical treatment for those alleged injuries, and filed suit against Murphy Oil in early 2018 because she felt Murphy Oil was liable for those injuries. *See* Hr'g Tr. 60:2–17 (Nov. 14, 2019). Therefore, Lymon certainly had "enough information" regarding a "possible cause of action" such that it must have been disclosed in her bankruptcy proceeding. *In re Coastal Plains*, 179 F.3d at 206–07.

In light of Lymon's express, affirmative, and continuous duty to disclose all assets in her bankruptcy case, her "omission of the personal injury claim from [her] mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *In re Superior Crewboats, Inc.*, 374 F.3d at 335. Meanwhile, Lymon has continued to pursue a recovery in the State Court Action against Murphy Oil and, as evident from her deposition in that case, may have taken steps to hide her bankruptcy case in that Action. As stated in *In re Superior Crewboats*, "[s]uch blatant inconsistency readily satisfies the first prong of the judicial estoppel inquiry." *Id*.

The second element of judicial estoppel is also met because this Court accepted Lymon's omission of the State Court Action when it confirmed her chapter 13 plan. As the Fifth Circuit has instructed:

> [T]he "judicial acceptance" requirement "does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition."

9

*In re Coastal Plains, Inc.*, 179 F.3d at 206 (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)); *see also In re Superior Crewboats, Inc.*, 374 F.3d at 335. "In chapter 13 cases, debtors file schedules on which the chapter 13 trustee and the court rely to confirm chapter 13 plans." *In re Miller*, 347 B.R. 48, 55 (Bankr. S.D. Tex. 2006). "In th[at] chapter, the discharge occurs only if the plan is confirmed; therefore, false statements in the schedules . . . are effectively 'accepted' by the Court." *Id*. Lymon did not contest this element of judicial estoppel.

As to the third and final element of judicial estoppel, Lymon's nondisclosure of the State Court Action would be considered inadvertent only if she "either lacks knowledge of the undisclosed claims or has no motive for their concealment." *In re Coastal Plains*, 179 F.3d at 210 (emphasis omitted). As discussed, the record establishes that Lymon did not lack knowledge of the potential claims underlying her State Court Action. And the Fifth Circuit has consistently held that a debtor has a motivation to conceal where, as here, she stands to "reap a windfall had [she] been able to recover on the undisclosed claim without having disclosed it to the creditors." *In re Superior Crewboats, Inc.*, 374 F.3d at 336. "Such a result would permit debtors to conceal their claims, get rid of their creditors on the cheap, and start over with a bundle of rights." *Id*. (internal citation and punctuation omitted). For that reason, "the motivation sub-element [of judicial estoppel] is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (internal quotations and citation omitted).

Like the debtor in *In re Superior Crewboats, Inc.*, Lymon had the requisite motivation to conceal the State Court Action, as she would have certainly reaped a windfall if she obtained a

recovery on her undisclosed claims to the exclusion of her creditors. Indeed, Lymon not only failed to disclose the State Court Action in her bankruptcy proceeding, but continued to pursue a recovery for herself in the State Court Action, and may have even attempted to hide her bankruptcy filing from Murphy Oil in those proceedings.[4] Lymon ultimately only disclosed the State Court Action when confronted by Murphy Oil.

Regarding whether she acted inadvertently, Lymon's counsel argued that his client made "mistakes" in failing to disclose the State Court Action in her bankruptcy case, but asserted that Murphy Oil had not been and would not be prejudiced by that omission. Hr'g Tr. 12:23–13:3; 62:1–18 (Nov. 14, 2019). But as in *Love*,

> whether [Murphy Oil or Lymon] would accrue an unfair detriment or benefit if the lawsuit were allowed to go forward *after [Murphy Oil] forced [Lymon] to disclose [her] claims* is an entirely different issue than whether [Lymon] had a financial motive to conceal [her] claims against [Murphy Oil] *at the time [Lymon] failed to meet [her] disclosure obligations*, which is the relevant time frame for the judicial estoppel analysis.

677 F.3d at 263 (citing *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276 (11th Cir. 2010) ("When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure." (citation omitted)). "Because the doctrine [of judicial estoppel] is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom

---

[4] Lymon testified that her failure to disclose the bankruptcy case in her deposition taken in the State Court Action was a "mistake" and blamed the "hostile" nature of the questioning during the deposition as the reason she had "shut down." Hr'g Tr. 55:8–25 (Nov. 14, 2019). Kay E. Donnelly, the court reporter who attended and transcribed Lymon's July 8, 2019, deposition testified at the evidentiary hearing as a witness for Murphy Oil. Hr'g Tr. 17:18–26:20 (Nov. 14, 2019). Donnelly's testimony addressed Lymon's demeanor during the deposition and whether Lymon submitted an errata sheet to correct her answers regarding her bankruptcy filing. Regardless of the veracity of Lymon's description of events that transpired at the deposition, however, the fact remains that Lymon did not disclose the State Court Action to this Court until nine months into the case and only disclosed after being compelled to do so by Murphy Oil. The fact that Lymon continued to pursue the State Court Action without disclosing it to this Court evidences she did not act inadvertently in failing to make the disclosure. That she may have actively tried to hide her bankruptcy filing in the State Court Action would only further confirm that she did not act inadvertently in failing to disclose the State Court Action in her bankruptcy case.

11

the doctrine is applied is not necessary." *Id.* at 261 (quoting *In re Coastal Plains, Inc.*, 179 F.3d at 205). The Court therefore concludes that Lymon's failure to disclose the State Court Action was not inadvertent.

Based on the record and the evidence adduced at the hearing on November 14, 2019, the Court finds that Murphy Oil has demonstrated that Lymon is barred from pursuing her prepetition claim against Murphy Oil under the doctrine of judicial estoppel. Therefore, the Court grants Murphy Oil's Motion for Declaratory Judgment to the extent it requests that Lymon herself be judicially estopped as a matter of law from pursuing the State Court Action against Murphy Oil.

### C. May the Chapter 13 Trustee Prosecute the State Court Action on Behalf of Lymon's Creditors?

But Lymon's counsel further made a plea on behalf of Lymon's unsecured creditors, asking that this Court allow the chapter 13 Trustee to prosecute the prepetition State Court Action and distribute any proceeds therefrom to Lymon's creditors. Hr'g Tr. 12:23–13:21 (Nov. 14, 2019). This request presents an interesting question in the context of this chapter 13 bankruptcy case.

As an initial matter, this Court is mindful of the goals set by the Fifth Circuit in applying judicial estoppel: "Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice." *Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011). "Ultimately, the challenge is to fashion a remedy that does not do inequity by punishing the innocent." *Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 575 (5th Cir. 2015) (internal quotations and citation omitted). "Therefore, judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estates." *Reed*, 650 F.3d at 574.

To accomplish that goal of achieving "substantial justice," courts that apply judicial estoppel to the debtor, preventing them from sharing in any recovery from the undisclosed cause of action, will nevertheless often allow a bankruptcy trustee to "step into the shoes" of the debtor, prosecute that cause of action, and distribute any proceeds to the debtor's creditors. As demonstrated in *Reed*, that remedy works particularly well when dealing with chapter 7 bankruptcy cases and causes of action that have been reduced to judgment. This Court must determine whether the same remedy would be appropriate in this chapter 13 case where the State Court Action is still in its early stages.

In *Reed*, a firefighter won a judgment of $1 million against the City of Arlington, Texas. 650 F.3d at 572–73. While the City appealed that judgment, the firefighter filed for chapter 7 bankruptcy relief, but did not disclose the judgment in his bankruptcy schedules. *Id*. at 573. The firefighter then received a no-asset discharge and the bankruptcy case was closed. *Id*. When the City learned of the firefighter's bankruptcy, it sought leave from the appellate court to argue that the firefighter was judicially estopped from collecting the judgment because he failed to disclose the judgment in his bankruptcy case. *Id*. Ultimately, the district court designed a remedy that estopped the firefighter from receiving any proceeds of the judgment against the City, but allowed the chapter 7 trustee to collect the judgment, distribute the proceeds to creditors, and refund the surplus to the City. *Id*. The Fifth Circuit, sitting en banc and considering whether judicial estoppel as applied to a debtor simultaneously applies against a trustee, held that "an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy." *Id*.

The remedy in the *Reed* case is optimal, given two conditions. First and foremost, the debtor in *Reed* filed for relief under chapter 7 of the Bankruptcy Code, one result of which is that

a chapter 7 panel trustee was appointed. Under the Bankruptcy Code, a chapter 7 trustee is vested with certain powers, not the least of which is the power to "collect and reduce to money the property of the estate for which the trustee serves." 11 U.S.C. § 704(a)(1). "A Chapter 7 Trustee, under § 704(a)(1), § 323, and [Bankruptcy Rule] 6009 may 'sue and be sued' and 'the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor . . . ." *In re Aycock*, No. 10-80516, 2014 WL 1047803, at *2 n.1 (Bankr. W.D. La. Mar. 18, 2014) (quoting *Hays & Co. v. Merrill Lynch*, 885 F.2d 1149, 1154 (3d Cir. 1989)).

The same is not true of a chapter 13 trustee. "[T]he Chapter 13 trustee has many duties of a trustee in a Chapter 7 or Chapter 11 case, but the Chapter 13 trustee's power to deal with estate property is significantly limited." KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY, 4th Edition, § 40.4, at ¶ 1 (Sec. Rev. Apr. 16, 2010), *available at* www.Ch13online.com. Section 1302 of the Bankruptcy Code enumerates the duties of a chapter 13 trustee, including in pertinent part:

> (b) The trustee shall—
>
> > (1) perform the duties specified in sections 704(a)(2), 704(a)(3), 704(a)(4), 704(a)(5), 704(a)(6), 704(a)(7), and 704(a)(9) of this title . . . .

11 U.S.C. § 1302(b)(1). Notably, Congress omitted from that list § 704(a)(1), so a chapter 13 trustee does not possess the same right as a chapter 7 trustee to "collect and reduce to money the property of the estate." Further, "[t]he chapter 13 trustee . . . is specifically restricted from exercising control of property of the estate under 11 U.S.C. § 1303. . . ." *In re Aycock*, 2014 WL 1047803, at *2 n.1. Section 1303 describes the rights and powers of a chapter 13 debtor, and states that "the *debtor* shall have, *exclusive of the trustee*, the rights and powers of a trustee under sections 363(b), 363(d), 363(d), 363(f), and 363(l), of this title." 11 U.S.C. § 1303 (emphasis added). In

14

other words, only a chapter 13 *debtor*—not the chapter 13 *trustee*—has the right to use, sell, or lease (*i.e.*, control) all property of the estate. Therefore, had the *Reed* debtor filed for relief under chapter 13, the remedy crafted by the district court would have required a chapter 13 trustee to act beyond the authority given her by Congress in §§ 1302 and 1303 of the Bankruptcy Code.

Some courts dealing with judicially estopped debtors in chapter 13 cases have contemplated a conversion of those cases to chapter 7 as part of the remedy. A conversion to chapter 7 would mean the appointment of a chapter 7 trustee, thereby removing the conflict regarding the chapter 13 trustee's lack of statutory authority to control assets of the estate and reduce to money property of the estate. *See, e.g.*, *United States v. Tangipahoa Parish Sch. Bd.*, No. 12-2202, 2017 WL 4049596 (E.D. La. Sept. 13, 2017), *aff'd* 766 F. App'x 38 (5th Cir. 2019); *Allen v. C & H Distributors, LLC*, No. 10-1604, 2015 WL 1399683 (W.D. La. Mar. 26, 2015), *aff'd as modified*, 813 F.3d 566 (5th Cir. 2015); *Henley v. Malouf (In re Roberts)*, 556 B.R. 266 (Bankr. S.D. Miss. 2016); *In re Aycock*, No. 10-80516, 2014 WL 1047803 (Bankr. W.D. La. Mar. 18, 2014).[5]

The second condition making the remedy in *Reed* work is this: the undisclosed cause of action had been essentially reduced to judgment by the time it was disclosed in the bankruptcy

---

[5] Two bankruptcy courts in this Circuit have interpreted the Fifth Circuit's opinion in *In re Flugence*, 738 F.3d 126 (5th Cir. 2013), to hold that chapter 13 trustees may stand in the shoes of a dishonest debtor, control property of the estate, and reduce to money property of the estate, just as a chapter 7 trustee is statutorily authorized to do under the Bankruptcy Code. *See In re Roberts*, 556 B.R. at 277–78; *In re Aycock*, 2014 WL 1047803, at **2–3 & n.1. Although the *Flugence* court reversed the district court and rendered judgment reinstating in full the bankruptcy court's judgment—a judgment that contemplated, among other things, a chapter 13 trustee pursuing a cause of action on behalf of a judicially estopped debtor—the specific issue of whether a chapter 13 trustee has the same rights and duties of a chapter 7 trustee under the Bankruptcy Code to control property of the estate was not presented to the panel. Rather, the pertinent issue before the *Flugence* court concerned whether the Fifth Circuit's holding in *Reed v. City of Arlington*, 650 F.3d 571 (2011) (which dealt with a chapter 7 case) should be read to limit an "innocent trustee's" recovery on an estopped debtor's cause of action strictly to the amount owed to creditors, which the *Flugence* court held it should not. *See In re Flugence*, 738 F.3d at 128, 131–32.

case; thus, the participation of the debtor was no longer necessary to litigate the claim. As Judge King noted in *Love v. Tyson Foods, Inc.*:

> [I]n *Reed*, the debtor had already won a judgment when his nondisclosure was brought to light. Here, by contrast, Love is a Title VII plaintiff whose claims against Tyson are likely far from judgment, and the success of those claims would almost certainly require his participation. A district court ruling on a judicial estoppel defense could conclude that prohibiting Love from sharing in any recovery would remove most, if not all, of his incentives to participate in the lawsuit and could prove fatal to his claims.

677 F.3d 258, 266 n.4 (5th Cir. 2012). Crafting any remedy that punishes a dishonest debtor while also preserving a recovery for creditors in a case in which the undisclosed cause of action is in its infancy is essentially futile. Yes, a court may judicially estop the debtor from participating in any recovery on that cause of action, but with all incentive for the debtor to participate actively in the prosecution of the case then removed, the court can reasonably estimate that the cause of action is, at that point, worthless to the estate's creditors.

Indeed, because the *Reed* debtor's bankruptcy case had already been closed at the time of disclosure, not only was the amount of the judgment known, but the value of creditor claims was known as well. When crafting a remedy in a judicial estoppel case, a court is aided by knowing whether the value of the cause of action would cover or exceed the total value of claims against the estate. The district court in *Reed* proceeded with the knowledge that the value of the debtor's judgment exceeded the value of the claims in that case and, therefore, included a provision in the remedy that refunded excess proceeds to the tortfeasor. Otherwise, the remaining surplus of the judgment after creditors had been paid in full may have vested in the debtor,[6] a result contrary to the purpose of judicial estoppel.

---

[6] In a chapter 7 case like *Reed*, unless otherwise ordered by the Court, § 706(a)(6) of the Bankruptcy Code requires that surplus estate funds be returned to the debtor after all creditors and estate professionals holding allowed claims are paid.

16

As in *Reed*, this Court wishes to craft a remedy "to deter dishonest debtors . . . while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estates." 650 F.3d at 574. But that remedy must also account for the "factual contexts" present here that are not in many of the judicial estoppel cases decided by other courts. *Love*, 677 F.3d at 261. Specifically, unlike the bankruptcy case in *Reed*, Lymon's case is one filed under chapter 13 and the recently disclosed State Court Action is at an early stage. *See* Hr'g Tr. 12:23–13:3 (Nov. 14, 2019) (revealing the case to be "early in the discovery stage").

This Court shares the same concerns that the *Roberts* and *Aycock* courts identified; that is, this Court reads §§ 1302 and 1303 to deny a chapter 13 trustee the requisite statutory authority to control property of the estate and reduce to money property of the estate as other sections of the Bankruptcy Code provide to a chapter 7 trustee. *See In re Roberts*, 556 B.R. at 277–78; *In re Aycock*, 2014 WL 1047803, at n.1. But unlike the *Roberts* and *Aycock* bankruptcy cases, which were closed at the time of the disclosure of the debtors' causes of action, Lymon's chapter 13 case has been open for just over a year. Because Lymon's bankruptcy case is young, this Court is not inclined to follow the path of the *Aycock* and *Roberts* courts and avoid the issues presented by §§ 1302 and 1303 by entering an order to show cause as to why the case should not be converted to one under chapter 7. Although this Court has found Lymon to be judicially estopped from pursuing the State Court Action against Murphy Oil and receiving any proceeds therefrom, a conversion to chapter 7 would impose harsher consequences upon Lymon that are not justified at this time (*i.e.*, the liquidation of all non-exempt assets and the relinquishment of control over her assets).

Furthermore, litigation in the recently disclosed State Court Action is still in the discovery stage; therefore, Lymon's participation in the prosecution of her own personal injury action is essential to obtaining a judgment against Murphy Oil, if one is to be had. But this Court can reasonably conclude that Lymon's participation in the State Court Action will sharply decline, if not cease altogether, now that she is judicially estopped from sharing in any recovery. *See Love*, 677 F.3d at 266 n.4. Although this Court would like to infer differently based on the fact that Lymon made the request to allow the chapter 13 Trustee to administer the State Court Action on behalf of her creditors, based on the record before it, this Court is not convinced that Lymon will follow through and cooperate with the Trustee in that endeavor. Without Lymon's cooperation in litigating the State Court Action, this Court estimates the State Court Action to have negligible value to Lymon's creditors. In light of the foregoing analysis of the unique circumstances of this case, the Court declines Lymon's request to allow the chapter 13 Trustee to pursue the State Court Action.

Finally, this Court overrules Murphy Oil's SOFA Objection requesting that Lymon's Second Amended SOFA be stricken from the record. The Court makes this ruling so that disclosure of the State Court Action can be maintained in the bankruptcy record.[7] That prepetition asset will remain property of the estate in the event that the case is ever converted to one under chapter 7. *See* 11 U.S.C. § 348(f); *see also In re Fonke*, 321 B.R. 199, 206–07 (Bankr. S.D. Tex.

---

[7] The Second Amended SOFA is not required to introduce or maintain the State Court Action as an asset of the estate. The State Court Action was already property of the estate as a matter of law. "Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (citing 11 U.S.C. § 541(a)(1)). "When an action is not disclosed by the debtor, it remains property of the bankruptcy estate even after the case is closed—indeed, unless it is administered or abandoned by the trustee, the action remains property of the estate 'forever.'" *In re Arana*, 456 B.R. 161, 170 (Bankr. E.D.N.Y. 2011) (citing *Lopez v. Specialty Rests. Corp. (In re Lopez)*, 283 B.R. 22, 31 (9th Cir. B.A.P. 2002)).

2005) (discussing function of § 348(f)). For clarity, whether Lymon's chapter 13 case is completed successfully, dismissed, or converted to one under chapter 7, this Court orders pursuant to 11 U.S.C. § 105(a) that the State Court Action remain an asset of the estate, never vesting in the Debtor. *See In re Derosa-Grund*, 544 B.R. 339, 383–84 (Bankr. S.D. Tex. 2016) (citing *In re Trevino*, 535 B.R. 110, 132 (Bankr. S.D. Tex. 2015) ("One of the primary functions of § 105(a) is 'to prevent an abuse of process.' A bankruptcy court has broad authority to take necessary or appropriate actions to prevent an abuse of process.")).

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law, this Court (1) GRANTS Murphy Oil's Motion for Declaratory Judgment, finding that Murphy Oil has sufficiently demonstrated that the doctrine of judicial estoppel forecloses Lymon from pursuing the State Court Action against Murphy Oil and (2) OVERRULES the SOFA Objection filed by Murphy Oil.

A separate judgment on the Complaint consistent with this Memorandum Opinion and Order will be entered contemporaneously and in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, January 15, 2020.

MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE